

Opinions of the United
States Court of Appeals
for the Third Circuit

12-14-2004

# Glanzman v. Metro Mgmt Corp

Precedential or Non-Precedential: Precedential

Docket No. 03-4546

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation
"Glanzman v. Metro Mgmt Corp" (2004). *2004 Decisions.* Paper 20.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/20

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-4546

_____

JULIA ANN GLANZMAN

v.

METROPOLITAN MANAGEMENT CORPORATION

Julia A. Glanzman,
                    Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 02-cv-07195)
District Judge: Hon. J. Curtis Joyner

_____

No. 03-4547

_____

JOSEPH W. FRIES,
Appellant

v.

METROPOLITAN MANAGEMENT CORPORATION

———

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 02-cv-07196)
District Judge: Hon. J. Curtis Joyner

———

Argued: October 25, 2004

Before: SCIRICA, Chief Judge, FISHER and ALDISERT,
Circuit Judges,

(Filed: December 14, 2004)

———

Steven A. Cotlar (Argued)
Law Office of Steven A. Cotlar
23 West Court Street
Doylestown, PA 18901

Attorney for Appellants

2

Timothy A. Gallogly (Argued)
Sirlin, Gallogly & Lesser
1529 Walnut Street 6th Floor
Philadelphia, PA 19102

Attorney for Appellee

––––––––

OPINION OF THE COURT

––––––––

ALDISERT, Circuit Judge.

Here we decide two separate, but related appeals from orders of the district court granting summary judgment in favor of Metropolitan Management ("Metropolitan") in a complaint by Julia Glanzman in Appeal No. 03-4546 under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (2000) and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-963 (1991) and also

3

in a similar complaint brought by Joseph Fries in Appeal No. 03-4547.

Glanzman's primary argument is that the district court erred in determining that she had failed to present sufficient direct evidence of age discrimination.

In reviewing the district court's grant of summary judgment we consider whether Glanzman: (1) presented direct evidence of age discrimination against Metropolitan, thereby triggering the test presented in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), ("Price Waterhouse test"), shifting to it the burden of showing that they would have terminated her employment even if they had not considered her age; (2) presented sufficient evidence to negate Metropolitan's evidence in support of its contention that it would have fired her, because of legitimate stated reasons, even if it had not been for her age; and (3) was harmed by the allegedly

4

retaliatory conduct of Metropolitan.[1]

Fries argues that the district court erred in determining that he failed to produce sufficient evidence that Metropolitan retaliated against him because his name appeared on a witness list in a proceeding initiated by Glanzman against Metropolitan before the Equal Employment Opportunity Commission ("EEOC"). He alleges that agreeing to testify was a protected activity under the ADEA.

To establish a claim for retaliation, a plaintiff must

---

[1] The standard of review applicable to an order granting summary judgment is plenary. Carrasca v. Pomeroy, 313 F.3d 828, 832-833 (3d Cir. 2002). We must apply the same test employed by the district court under Rule 56(c), Federal Rules of Civil Procedure. Id. Accordingly, the district court's grant of summary judgment was proper only if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. The non-moving party is entitled to every favorable inference that can be drawn from the record. Id.

show that: (1) he was engaged in protected activities; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. Farrell v. Planters Lifesavers Company, 206 F.3d 271, 279 (3d Cir. 2000).

In appeal No. 03-4546, we conclude that the district court erred in determining that Glanzman had failed to produce direct evidence of age discrimination. We decide, however, that Metropolitan met its burden of showing that it would have terminated her employment even if it had not considered her age and that Glanzman presented insufficient evidence to negate Metropolitan's evidence. We, therefore, affirm the judgment.

In appeal No. 03-4547, we conclude that Fries has not

6

produced any evidence to overcome his own admission that he was fired because he refused to write a letter of apology for his wrong doing, one of Metropolitan's proffered non-discriminatory reasons, and not because of any protected activity. We affirm this judgment as well.[2]

## I.

Glanzman alleges that she was discharged because of her age from her job as the manager of Doylestown Meadows, a 150-unit apartment complex in Bucks County,

---

[2] Subject matter jurisdiction over the two appeals under the ADEA, 29 U.S.C. §§ 621-634, arises pursuant to 28 U.S.C. § 1331. We exercise pendent jurisdiction over Appellants' claims arising under the PHRA, 43 P.S. §§ 951-963, pursuant to 28 U.S.C. § 1367. As the district court points out "the same legal standards and analysis are applicable to claims under both the ADEA and the PHRA and hence it is not uncommon to address such claims collectively. See, e.g., Bailey v. Storlazzi, 729 A.2d 1206 (Pa. Super. 1999)." (Op. of the dist. ct. at 7; App. at 8.) We also will address these claims collectively. We have jurisdiction over both appeals pursuant to 28 U.S.C. § 1291.

Pennsylvania. The complex is owned by Appellee Metropolitan. She had managed the complex for the previous owner and was then hired, at the age of sixty, to stay on as the manager when Metropolitan acquired the complex in 1997.

She had a history of accepting, but not reporting, personal collect telephone calls with charges totaling in excess of $900.00. She said that the calls were from a sick aunt, but in reality they were from her boyfriend who was serving time in prison. She made arrangements to reimburse Metropolitan for the expense of these calls and was allowed to keep her job. She had also allowed her granddaughter to access the internet from her office computer which resulted in charges to Metropolitan. When confronted with this wrongdoing, she apologized. She was again asked to reimburse Metropolitan for the cost and allowed to keep her job.

8

Testimony was presented that Glanzman was not always where she was supposed to be during working hours and that she often failed to respond in a timely manner when paged. Metropolitan had reason to believe that Glanzman, who owned rental property herself, used Metropolitan employees, Joseph W. Fries and Phil Rittenhouse, to perform work at her property during hours when they were being paid by Metropolitan to work at Doylestown Meadows.

Metropolitan had reason to believe Glanzman was attempting to steal a dishwasher to place in one of her properties. She said that a tenant in Doylestown Meadows had requested the dishwasher but the tenant stated that she did not request it and did not want it because she only used her existing dishwasher to store bread and cereal. When confronted with this information, Glanzman changed her story and said that the tenant's daughter had requested the

dishwasher. This proved to be untrue as well.

On her part, Glanzman relies on three statements made by her supervisors at Metropolitan. First, some ten months before her termination, Glenn Fagan, vice president of property management for Metropolitan, asked her if she had told the son of one of the residents that she was 63 years old. Second, soon after the conversation with Glenn Fagan, Trish Kotsay, her immediate supervisor, asked if she was thinking of retiring. Third, Glenn Fagan allegedly told two of Glanzman's co-workers, Joseph Fries and Phil Rittenhouse, that he wanted to fire her and "replace her with a young chippie with big tits."

Glanzman ceased her employment during a conversation between Glenn Fagan and her. Glenn Fagan confronted her with the fact that the tenant in apartment 115 had not requested the dishwasher that had been ordered for that apartment and that the tenant had specifically said she

10

had no need for the dishwasher. Glanzman said that the woman's daughter had ordered the dishwasher. Glenn Fagan then suggested that they call the daughter. At this point, Glanzman either voluntarily resigned or was fired. For purposes of the present case, Metropolitan has agreed that she was fired. Metropolitan contends that if Glanzman was fired the decision could only have been made by Judy Goldstein, president of Metropolitan, or Scott Fagan, vice president of Metropolitan.

## II.

Fries' case arose on December 14, 2001 when he was terminated from his employment as Maintenance Superintendent at the same Doylestown Meadows apartment complex where Glanzman served as the manager. He has since been re-employed by Metropolitan. His claim is limited to damages sustained between the time he was terminated and when he was re-employed.

11

Metropolitan asserts that Fries was fired because he performed work on another rental property, owned by Glanzman, during company time using parts and materials owned by Doylestown Meadows and then refused to submit a written statement admitting to the act and apologizing.

Fries does not dispute that he and a co-worker, Phil Rittenhouse, worked on Glanzman's own rental property on company time, that he used company materials and that he refused to write a letter of apology. He instead contends that his actions were not wrongful because he was using comp time to work on Glanzman's property.

His version was at variance with that of Rittenhouse, who signed a letter to Metropolitan admitting that he had worked on Glanzman's property with Fries on company time and apologized for his conduct. Rittenhouse was not terminated.

Fries contends that his refusal to write the apology

letter was not wrongful because Metropolitan was asking him to write things that were not true; specifically, it was not true that he worked for Glanzman on company time or that Glanzman had asked him to install one of Metropolitan's dishwashers on her own property.

Fries says also that the real reason he was fired on December 14 is that on December 10 Metropolitan received a copy of Glanzman's EEOC charge identifying him as a potential witness in that proceeding. Fries had earlier heard Glenn Fagan, Metropolitan's vice president of property management, say to him and Rittenhouse that he wanted to replace Glanzman with "a young chippie with big tits." He had then reported that statement to Glanzman, who was subsequently fired and claimed discrimination.

Metropolitan responds that it started advertising Fries' position soon after his refusal to write the letter of apology and they kept him on because they initially had trouble

finding someone else to fill the position. According to Metropolitan the timing of Fries' termination had nothing to do with learning that he was listed as a possible witness in the EEOC proceeding, it was only because they had finally found someone to replace him.

III.

We will first address Fries' appeal in which he contends that the real reason he was fired was because he was listed as a potential witness in an EEOC procedure instituted by Glanzman against his employer.

Unfortunately, the words of Fries under oath at a deposition cut the props out from under his argument. Fries admitted that the reason he was fired was that he refused to write the letter of apology requested by Metropolitan. Fries testified:

A. I know why I got fired.

Q. You know why?

14

A. He [Phil Rittenhouse] signed an apology letter and I didn't.

Q. Then you understood that the reason he [Phil Rittenhouse] stayed on was because he signed a letter saying that he did it [worked on the Glanzman property] and he apologized, correct?

A. Yes.

Q. And you said I'm not going to write any letter saying anything?

A. Correct.

Q. And you were told by Ms. Kotsay [one of the supervisors] I believe that if you weren't going to fess up, acknowledge that what you did was wrong, that you would be fired?

A. Correct.

Q. And notwithstanding her telling you that you didn't provide any letter or statement or anything like Rittenhouse acknowledging that you were working on Ms. Glanzman's property right?

A. Right.

Q. And as a result you were fired, correct?

A. Correct.

15

(App. at 59.)

Although Fries has presented a number of other arguments in support of his appeal, in the view we take it is not necessary that we meet them. His own words under oath completely preclude him from establishing the third of the three prongs necessary to prevail in a retaliation case. To establish a claim for retaliation, Fries must show that being engaged in protected activities caused him to be fired. He has not shown this.

The Age Discrimination statute provides:

It shall be unlawful for an employer to discriminate against his employees . . . because such individual . . . has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d) (2000).

Fries was not fired for being a possible witness in Glanzman's EEOC case. He admits that he was fired for refusing to apologize for the work he did on Glanzman's

16

private property while he was being paid by Metropolitan.

Although Fries raised other arguments, because we hold that his being engaged in a protected activity did not cause his termination, it is unnecessary to discuss whether he was engaged in protected activity and whether the Metropolitan took an adverse employment action after or contemporaneous with the this protected activity. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000). Accordingly, we will affirm the district court's judgment in Fries' Appeal No. 03-4547. We now turn to Glanzman's appeal.

IV.

"To prevail on an age-based termination claim, a plaintiff must show that his or her age 'actually motivated' and 'had a determinative influence on' the employer's decision to fire him or her." (Op. of the dist. ct. at 7; App. at 8 (citing Reeves v. Sanderson Plumbing Products, 530 U.S.

17

133, 141 (2000).) This showing that age motivated or had a determinative influence on the decision of the employer can be made either through the use of direct evidence or circumstantial evidence. If direct evidence is used, the proponent of the evidence must satisfy the test laid out in Price Waterhouse, in order to prove a violation of the ADEA.[3] See Fakete v. Aetna, 308 F.3d 335 (3d. Cir. 2002) (applying the Price Waterhouse test to an ADEA case where direct evidence of discrimination was presented). If circumstantial evidence of age discrimination is used, then the proponent of the evidence must satisfy the three-step test of McDonnell

---

[3] Congress overruled this test as applied in the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e-2, 2000e-5 (f). In that law Congress specified that unless otherwise provided "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." Id. § 2000e-2. Because the Civil Rights Act of 1991 does not apply to ADEA cases and because recently in Fakete, we used the Price Waterhouse test to decide an ADEA case we continue to apply the Price Waterhouse test in order to resolve ADEA cases.

Douglas Corp. v. Green, 411 U.S. 792 (1973).

In this case, Glanzman relies solely on direct evidence of age discrimination, and urges this court to use the Price Waterhouse framework.[4] We will do so. Under Price Waterhouse, once direct evidence of age discrimination is presented the "burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered . . . [her] age." Fakete, 308 F.3d at 338 (citing Price Waterhouse, 490 U.S. at 265-266, 276-277)

## A.

To be "direct" for purposes of the Price Waterhouse test, evidence must be sufficient to allow the jury to find that

---

[4] If it were necessary to engage in a McDonnell Douglas analysis we would agree with the district court that Metropolitan has provided legitimate non-discriminatory reasons for the termination of Ms. Glanzman's employment and that Glanzman has not succeeded in providing evidence that the proffered reasons are a mere pretext. (Op. of the dist. ct. at 14-15; App. at 15-16.)

the decision makers placed a substantial negative reliance on the plaintiff's age in reaching their decision. <u>Fakete</u>, 308 F.3d at 338. This means that Glanzman must produce evidence of discriminatory attitudes about age that were causally related to the decision to fire her.

Metropolitan points out that "[n]ot all evidence that is probative of illegitimate motives . . . is sufficient to constitute direct evidence of discrimination." (Appellee br. at 10.) Specifically, Metropolitan mentions "stray remarks in the workplace" and "statements by non-decision makers" as the type of evidence that would not rise to the level of "direct" for purposes of the <u>Price Waterhouse</u> test. (<u>Id.</u>)

Glanzman points to three pieces of "direct" evidence of discrimination on the part of her superiors at Metropolitan. First, ten months before her termination, Glenn Fagan asked her if she had told the son of one of the residents that she was sixty-three years old. The district court correctly concluded

20

that there was nothing discriminatory in this inquiry and it certainly does not provide direct evidence of age discrimination. (Op. of the dist. ct. at 11; App. at 12.) Second, shortly after this question from Glenn Fagan, Ms. Kotsay, Glanzman's immediate supervisor, asked Glanzman about her retirement plans. Again the district court correctly determined that this was not direct evidence of age discrimination and could just as easily be explained by a desire on Metropolitan's part to do some long-term planning. (Id.)

The third piece of evidence proffered by Glanzman merits a more in depth consideration. Glanzman alleges that Glenn Fagan told two of her co-workers, Joseph Fries and Phil Rittenhouse, that he wanted to fire her and replace her with an exceptionally endowed younger woman. The district court determined that this remark was not direct evidence of discrimination because, though it was offensive, it does not show that "the reason for Ms. Glanzman's termination was to

21

replace her with a 'young chippie with big tits.'" (Op. of the dist. ct. at 11, App. at 12.) Metropolitan adds to this explanation by contending that this statement cannot be direct evidence because "the comment was not made by Judy Goldstein or Scott Fagan, the individuals who made the decision to discharge her." (Appellee br. at 12.)

Price Waterhouse explicitly states that statements made by non-decision makers or by a decision maker unrelated to the decisional process itself are not direct evidence. 490 U.S. at 277. The statement of Glenn Fagan that he wanted to replace Ms. Glanzman with a younger woman does not fit easily into either of these non-direct evidence categories. Glenn Fagan is the vice president of property management for Metropolitan and was, in that capacity, Ms. Glanzman's boss. It is undisputed that Glenn Fagan frequently paged Ms. Glanzman and checked in on the property about once a month. Ms. Glanzman's employment was terminated during a

22

conversation with Glenn Fagan. In its brief, Metropolitan alleges that Judy Goldstein and Scott Fagan, who are president and vice president of the company, respectively, made the decision to fire her. (Appellee br. at 11-12.) The Appellee does not support this claim with evidence in the record, and even if the claim is true, Judy Goldstein and Scott Fagan must have relied heavily on Glenn Fagan in making the decision because he was the company officer in direct contact with Ms. Glanzman.

Further, Price Waterhouse itself and Fakete, our decision applying the Price Waterhouse test in the context of an ADEA claim, speak alternatively of the decision maker and person involved in the decision-making process. See Fakete, 335 F.3d at 339. If Glenn Fagan was not the decision maker in the decision to terminate Glanzman's employment he was almost certainly involved in the decision-making process. Metropolitan admitted for purposes of its motion for

23

summary judgment that Glenn Fagan recommended Glanzman's termination.[5] Also, in his statement, Glenn Fagan explains that his usual practice is to make hiring and firing recommendations to Scott Fagan and Ms. Goldstein, who then make the final decisions. (App. at 221.) On the basis of the evidence in the record, therefore, a rational jury could easily find that Glenn Fagan was a decision maker, or at least a participant in the employment decision in this case.

## B.

We are troubled by the district court's determination that Glenn Fagan's remark "does not in and of itself reflect that the reason for Ms. Glanzman's termination was to replace her with a" younger woman. (Op. of the dist. ct. at 11; App. at

---

[5] This is based on Glanzman's contention that "Glenn Fagan recommended Glanzman's termination" for which they cite page 26 of Metropolitan's brief in support of the motion for summary judgment which was not included in the appendix. We have examined the brief. Metropolitan did in fact admit that Glenn Fagan recommended Glanzman's termination to Scott Fagan.

12.) To be sure, Glenn Fagan's statement does not support a compellable inference that ageism was the cause of the decision to terminate Ms. Glanzman's employment. Such a statement, however, is fraught with permissible inferences that he desired to fire Ms. Glanzman at least in part because of her age. One could reasonably determine that Glenn Fagan's statement that he would replace Ms. Glanzman with a younger woman is, in effect, an admission that at least part of the actual reason for the employment decision was a desire to hire someone younger and more endowed. See Oglesby v. Coca-Cola Bottling Co., 620 F. Supp. 1336, 1346 (D.C. Ill., 1985) ("[d]irect evidence, such as an employers statement about wanting to get rid of older employees and replace them with younger ones, will of course suffice.") A rational jury could find that Metropolitan placed a substantial negative reliance on Glanzman's age in making the decision to terminate her employment. Accordingly, we conclude that

25

Glanzman met her burden and presented direct evidence.

VI.

Because Glanzman has succeeded in presenting the necessary quantum of direct evidence of discrimination, the burden of going forward with the evidence shifts to Metropolitan to "prove that it would have fired . . . [Glanzman] even if it had not considered . . . [her] age." Fakete, 335 F.3d at 338 (citing Price Waterhouse, 490 U.S. at 265-266, 276-277). This is a high burden on a motion for summary judgment because Metropolitan must leave no doubt that a rational jury would find that Metropolitan would have fired Ms. Glanzman even if it had not been for the discriminatory statement.

The district court concluded that Metropolitan met even this high evidentiary standard. The opinion of the district court states that "evidence of record clearly demonstrates that the defendant-employer has shown that it would have fired

26

the plaintiff even if it had not considered her age." (Op. of the dist. ct. at 12; App. at 13.) The district court then went on to lay out myriad non-age-related reasons for which any rational employer would have fired Ms. Glanzman.

> [I]t is clear from the unrebutted deposition testimony and the declarations of all the witnesses, including the plaintiff herself, that she was not always where she was supposed to be during working hours, she frequently did not respond timely when paged, she had two of the maintenance workers from Doylestown Meadows perform work on apartments which she herself owned and which were not part of the Doylestown Meadows complex, she ordered a dishwasher for a Doylestown Meadows apartment which the tenant neither requested, needed or wanted. When Ms. Kotsay inquired into whether the dishwasher was to replace an existing one or whether it was part of an apartment renovation so she could determine how to record it, Ms. Glanzman lied by admittedly stating first that it was to replace a broken one and that the tenant herself had requested it but then later claiming that the tenant's daughter had requested it. When the company investigated the matter, it learned that the existing dishwasher in the apartment at issue was not broken, neither the tenant nor her daughter had requested a new one and in fact the tenant did not want one since she only used her dishwasher to store bread. The evidence of record further strongly suggests that the plaintiff intended to have that dishwasher installed in one of her own apartment units. In addition, the plaintiff had in the past accepted almost $1000 worth of collect calls from a friend on her office telephone and permitted her

27

granddaughter to use the internet on her office computer. Although Glenn Fagan recommended that Ms. Glanzman be terminated for these infractions, which occurred approximately one to one and-a-half years before this cause of action arose, the defendant company gave her a second chance but required her to make restitution in exchange for keeping her job. Therefore, again giving the plaintiff the benefit of all possible doubt that her age was a determinative factor in her termination, the defendant has adduced more than sufficient evidence that it would have terminated her regardless of age on the basis of her past infractions, her misconduct in directing maintenance men, leaving the premises without authorization during work hours, failing to timely respond to pages and on the company's suspicion that she was trying to steal a new dishwasher.

(Op. of the dist. ct. at 12-14; App. at 13-15.)

We conclude that the district court's assessment of the facts is accurate. Glanzman had already been warned about serious violations of Metropolitan's policies, she was then caught committing even more serious violations, and lying to cover up what Metropolitan reasonably determined to be a plan to steal a dishwasher for use on a property she owned. Glanzman does not even try to rebut most of the district court's analysis in her brief. Where she does attempt a

28

rebuttal, she simply ignores the overwhelming weight of evidence against her. (See Appellant's br. at 12-14.) Metropolitan does not have to prove that Glanzman committed these infractions, but only that it was reasonable in its belief that she had committed them. Even if she committed only a few of them, Metropolitan would have had a surfeit of legitimate reasons to fire her. We thus conclude that no rational jury could doubt that Metropolitan would have fired Glanzman even if it had not considered her age. We affirm on the ADEA claim because we conclude that Metropolitan has succeeded in meeting its burden under the Price Waterhouse test.

VII.

Glanzman makes a separate, but related argument. She contends that Metropolitan retaliated against her because she had filed a claim for unemployment compensation benefits in which she cited discrimination as the cause of her termination.

29

To establish a claim for retaliation, a plaintiff must show that: (1) she was engaged in protected activities; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).

The alleged retaliation came in the form of Metropolitan's notification that Glanzman would have to vacate her rent-free-apartment, which she had the use of as a benefit of her employment, as of November 30, 2001 and Metropolitan's contesting her right to unemployment compensation benefits. Assuming that Glanzman's filing of her claim for unemployment based on discrimination was a protected activity, her retaliation claims fail for two reasons.

First, Glanzman could not suffer adverse employment action after or contemporaneous with the protected activity.

30

Quite obviously, given the nature of unemployment benefits, her employment was terminated before, not after or contemporaneous with, her filing for unemployment compensation. Once her employment was terminated it was not possible for her to suffer adverse employment action.

Second, she suffered no harm from these allegedly retaliatory actions of Metropolitan. She continued, notwithstanding the notice to quit, to live in her apartment, rent free, until January 4, 2002. She was also successful in her claim for unemployment benefits in face of Metropolitan's opposition. Because Glanzman did not suffer economic harm as a result of Metropolitan's actions her claim would be denied even if the actions had been retaliatory.

* * * * *

In sum, evidence that Glenn Fagan told two of Glanzman's co-workers that he would like to replace her with a younger woman was direct evidence, and triggers the Price

31

Waterhouse test. The statement can reasonably be read as, in effect, an admission that part of the reason Glenn Fagan wanted to fire Glanzman was to replace her with a younger person. If Glenn Fagan was not the one who made the decision to terminate Glanzman's employment, he was, at least, very involved in the decision making process. We therefore conclude that the remark is direct evidence of age discrimination which triggers the Price Waterhouse test.

Metropolitan, however has succeeded in presenting overwhelming evidence of Glanzman's misconduct, and based on this uncontradicted evidence, a reasonable jury could only conclude that Metropolitan would have fired Glanzman even if they had not considered her age.

Glanzman's retaliation argument fails because she was not employed by Metropolitan at the time of the alleged retaliation and she suffered no legal injury because of the alleged retaliation.

32

Because Metropolitan has very substantially carried its burden under the Price Waterhouse test and Glanzman has not succeeded in establishing a factual basis for her retaliation claim, we will also affirm the judgment of the district court in Appeal No. 03-4546.

Accordingly, the judgments of the district court at No. 03-4546 and 03-4547 will be affirmed.