

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-9-2005

# Warner v. Fedex Ground Pkg Sys

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3550

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Warner v. Fedex Ground Pkg Sys" (2005). *2005 Decisions.* Paper 1237.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1237

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>NOT PRECEDENTIAL</u>

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-3550

MARIANNE WARNER,

Appellant

v.

FEDEX GROUND PACKAGE SYSTEM, INC.

Appellee

_____

On appeal from the United States District Court
for the Western District of Pennsylvania
District Court No.: 03-cv-45E
District Judge: The Honorable Sean L. McLaughlin

_____

Submitted pursuant to LAR 34.1(a)
May 6, 2005

Before: MCKEE, SMITH, and VAN ANTWERPEN, *Circuit Judges*

(Filed: May 9, 2005 )
_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge*.

Marianne Warner appeals from an order entered on July 23, 2004, in which the

United States District Court for the Western District of Pennsylvania granted summary

judgment in favor of defendant FedEx Ground Package System, Inc. ("FedEx") in

connection with Warner's claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. §§ 951-963. The District Court held that FedEx was entitled to summary judgment under the three-step framework applicable in instances where a plaintiff seeks to prove age discrimination based upon indirect evidence. We will affirm the judgment of the District Court.

Because we write only for the parties, we restrict our discussion to those facts and legal principles necessary to resolution of this appeal. We exercise plenary review over the District Court's decision to grant summary judgment. *See Carrasca v. Pomeroy*, 313 F.3d 828, 832-33 (3d Cir. 2002). In doing so, we must apply the same test employed by the District Court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, under which summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See id.* Where a moving party has carried its burden under Rule 56(c), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Id.*

2

In the instant case, the parties agree that the framework originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), governs the summary judgment inquiry. Under *McDonnell Douglas* and subsequent decisions, the Supreme Court has established a three-step process for "an allocation of the burden of production and an order for the presentation of proof . . . in discriminatory treatment cases." *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993)). The Supreme Court as well as our own Court has used this three-step process in assessing an employer's entitlement to summary judgment in lawsuits arising under the ADEA. *See, e.g., Reeves*, 530 U.S. at 142; *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (*en banc*). Under this process, the plaintiff must first establish a prima facie case of discrmination. *See Reeves*, 530 U.S. at 142. For the second step, the burden shifts to the employer, who must produce evidence that the adverse employment decision was made for a legitimate, nondiscriminatory reason. *See id.* This burden is one of production, not persuasion; it "can involve no credibility assessment." *Id.* (quoting *St. Mary's Honor Center*, 509 U.S. at 509.

Once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision, the plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons proffered by the defendant were not its true reasons, but instead were a pretext for discrimination. *See Reeves*, 530 U.S. at

3

143. To survive summary judgment at this third step, the plaintiff must submit evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Keller*, 130 F.3d at 1108 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). If the plaintiff argues that the employer's articulated reason should be disbelieved, the plaintiff cannot survive summary judgment merely by submitting evidence tending to show that the employer's decision was wrong or mistaken. *See Keller*, 130 F.3d at 1109; *Fuentes*, 32 F.3d at 765. Instead, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Fuentes*, 32 F.3d at 765. "In simpler terms, [the plaintiff] must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller*, 130 F.3d at 1109. If the plaintiff seeks to overcome the employer's proffered nondiscriminatory reasons by arguing that discrimination played a motivating role in the employer's decision, the plaintiff "must point to evidence that proves age discrimination in the same way that critical facts are generally proved – based solely on the natural probative force of the evidence." *Id.* at 1111.

Warner was employed for approximately fourteen years by FedEx, eventually

4

becoming a terminal manager. Warner was discharged from her position with FedEx on February 2, 2001. She later filed suit against FedEx, asserting that she had been improperly terminated on account of her age. Here, the parties appear to agree that Warner has presented evidence sufficient to establish her prima facie case. FedEx argues that it terminated Warner because Warner failed to detect extensive "padding" by independent contractors under Warner's supervision, resulting in a significant financial loss to the company.[1] Warner does not appear to contest the fact that FedEx has presented sufficient evidence with respect to this issue to satisfy its burden of production under the second step of the three-part test outlined above. Thus, our analysis proceeds to the third step of the inquiry, and we must determine whether Warner has presented evidence sufficient for a reasonable factfinder to conclude by a preponderance of the evidence either that FedEx's proffered reason should be disbelieved, or that an invidious discriminatory reason was more likely than not a motivating or determinative cause of FedEx's actions. *See Keller*, 130 F.3d at 1108. We agree with the District Court that Warner has failed to meet this burden.

Warner's position as the manager of a FedEx terminal in Oil City, Pennsylvania, involved supervision of two to four package handlers, a data entry clerk, a check-in coordinator, and seven independent contractor drivers. Given her supervisory role, it is

---

[1] "Padding" in this context refers to a practice whereby FedEx drivers would falsify records to inflate artificially the number of packages they had delivered. Drivers took these actions in an effort to obtain increased compensation from FedEx, because FedEx's compensation scheme for its drivers is based in part upon the number of packages delivered by a driver during a shift.

not implausible that FedEx would react with disfavor upon learning that a number of the independent contractor drivers at the Oil City terminal had been stealing from FedEx for a significant period of time without Warner detecting the theft. FedEx also argues that its actions were based in part upon the fact that it believed Warner had learned of the theft as early as September 2000, yet failed to report it to FedEx until November 2000. Warner argues she did not learn of the theft until November 2000, but she does not dispute that she went on an observation ride with FedEx driver Daniel Farren in the fall of 2000, that Farren indicated to her that other drivers were not performing as efficiently as their records made it appear, and that her own memorandum documenting her observation ride with Farren is dated September 7, 2000. Under these circumstances, it cannot be said that it is inherently implausible for FedEx to believe that Warner knew or should have known of the padding as of September 2000. This belief held by FedEx, even if mistaken as a factual matter, nonetheless provides a nondiscriminatory motive for FedEx's termination of Warner. *See, e.g., Glanzman v. Metropolitan Management Corp.*, 391 F.3d 506, 515 (3d Cir. 2004) (affirming grant of summary judgment in favor of employer in connection with ADEA claim, and noting that with respect to employee's alleged misconduct, "[The employer] does not have to prove that Glanzman committed these infractions, but only that it was reasonable in its belief that she had committed them"); *Fuentes*, 32 F.3d at 765 (employer's wrong or mistaken belief can provide a nondiscriminatory motive for employer's actions).

6

Warner's other challenges to the District Court's grant of summary judgment are likewise lacking in merit. She argues that the delivery records and FedEx databases available to her prior to November 2000 would not have allowed her to detect the drivers' fraud, but she does not dispute that the records used by FedEx's internal auditors to confirm the fraud had been available to her at the Oil City terminal prior to FedEx's November 2000 internal investigation. In addition, the relevant question for summary judgment purposes is not whether Warner could have done a better job of detecting the fraud at an earlier date; the question is whether the evidence shows that it was so clear that Warner *could not* have done better that FedEx could not have believed otherwise. *See Keller*, 130 F.3d at 1109. As in *Keller*, "the answer to this question is plainly negative." *Id.*

Warner notes that FedEx failed to discharge William McDermott, a regional manager who was her direct supervisor, and argues that since McDermott had access to the same information that she did, and failed to detect the Oil City padding until it was brought to his attention, FedEx's decision to retain McDermott demonstrates that FedEx's articulated reason for discharging Warner is a pretext for discrimination. Warner makes a similar argument in relation to FedEx's inaction with respect to Farren, one of the independent contractor drivers at the Oil City terminal. Warner overlooks the fact that McDermott is not similarly situated to her, in that McDermott's broader supervisory role did not encompass detailed day-to-day oversight of each specific terminal in his region.

7

Likewise, Farren, who is not even an employee of FedEx, was not responsible for supervision of his fellow independent-contractor drivers, and thus it is understandable that FedEx would choose to maintain a contractual relationship with Farren, notwithstanding that Farren may have suspected fraud by other drivers for several months prior to actually reporting his suspicions.

Warner also seeks to rescue her claim by citing to remarks made by FedEx managerial personnel on several occasions prior to her February 2001 termination. Alleged remarks by FedEx Regional Human Resources Director Jayne Powell concerning FedEx's desire to promote younger managers are ambiguous in terms of their meaning, and moreover were made months or even years prior to Warner's termination. In addition, there is no evidence that Powell played any role in the termination decision. Evidence of such remarks generally is not a sufficient basis for denying an employer's motion for summary judgment. *See Fuentes*, 32 F.3d at 767 ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision") (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)). Likewise, McDermott's comment in early 2000 that Warner was "too old for jumping" off of trucks during observation rides is not a sufficient basis upon which to deny summary judgment to FedEx. *See Keller*, 130 F.3d at 1112 (where plaintiff's manager commented during meeting five months prior to termination that plaintiff should hire

8

additional assistant managers if he was getting too old to travel, manager's comment could not "reasonably be viewed as sufficient to prove by a preponderance of the evidence that age was a determinative cause of Keller's subsequent termination").

We have considered Warner's other arguments in addition to those discussed above, and find them to be without merit.  The judgment of the District Court will be affirmed.