

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-20-2005

# Snik v. Verizon Wireless

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2762

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Snik v. Verizon Wireless" (2005). *2005 Decisions.* Paper 90.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/90

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2762
_____

WALTER T. SNIK,

Appellant

v.

VERIZON WIRELESS
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cv-02976)
District Judge:  Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit LAR 34.1(a)
December 6, 2005

Before:  RENDELL, FISHER and VAN ANTWERPEN, *Circuit Judges*.

(Filed  December 20, 2005)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

After being turned down for a management position at Verizon Wireless

("Verizon") in favor of someone twenty years his junior, Walter Snik brought suit against

the company under the Age Discrimination in Employment Act of 1967 (ADEA), 29

U.S.C. §§ 621-634, and the Pennsylvania Human Relations Act (PHRA), 43 PA. CONS.

STAT. §§ 951-963. Following discovery, the United States District Court for the Eastern

District of Pennsylvania concluded that the company had offered a legitimate reason for

its decision and that Snik had presented no evidence of pretext. It granted summary

judgment in favor of Verizon. This timely appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review

over the order of the District Court granting summary judgment. *E.g.*, *Hill v. City of*

*Scranton*, 411 F.3d 118, 124 (3d Cir. 2005). We will affirm.

I.

As we write for the parties, we set forth only those facts necessary for our analysis.

When Snik applied for the management position with Verizon in March 2001, he was

approximately fifty years old. He had been employed by Verizon as a sales representative

at one of its retail stores for the last three years, and had nearly thirty years of prior

experience in the telecommunications field. His supervisors at Verizon rated his

performance as generally satisfactory, but noted that he "should pursue more roles in

leading the team." Snik was usually, but not always, able to meet monthly sales quotas.

The position for which Snik applied was "business sales manager." The person

hired would be responsible for supervising a team of representatives selling wireless

services to businesses in a defined geographic region and ensuring that the team met

monthly sales quotas. The posting for the position stressed that applicants must have the

2

ability to promote "growth" and "development" of the sales team and must have experience in direct business sales within the telecommunications industry. (S.A. 75-76.)

Snik's application was reviewed for accuracy by his store manager and, pursuant to company policy, forwarded to the director of the sales department, Jeff Suskind. Soon after receiving the application, Suskind contacted Snik for a telephone interview. Their conversation lasted for less than ten minutes. Suskind offered a brief description of the qualities necessary for the position, emphasizing the need for "strong leadership" and the ability to "rebuild and develop an entire sales team," and asked about Snik's prior experience. Snik responded that, in his prior capacity as sales manager for a company providing public telephone services for the City of New York, he had been responsible for supervising several individuals and had participated in "a lot of high profile meetings with upper management." He did not offer other examples of his accomplishments or ask Suskind about the responsibilities of the position. At the end of the call, Suskind complimented Snik on his experience and advised him that he would be contacted shortly to schedule an in-person interview.

No such interview was scheduled, however. Suskind contacted the regional supervisor of the retail store at which Snik worked. The supervisor informed Suskind that Snik had received average performance reviews and that, because he had not "presented himself as a leader," he was not considered to be "next in line" to manage the store. Suskind did not contact Snik's immediate supervisor or seek other input. Rather, he

decided not to offer the position to Snik based on the regional supervisor's comments and Snik's attitude during the telephone conversation, which Suskind characterized as unenthusiastic and "neutral."

Suskind interviewed two other applicants. One was a thirty-three-year-old manager with Verizon; he was denied the position – also without an in-person interview – because he lacked direct business sales experience. The other applicant, Robert Kozloski, was a thirty-three-year-old employee of a competing wireless telecommunications company. He had been involved in business sales for the last eight years and had worked as a direct business sales manager – the same position that Verizon was attempting to fill – for the last five years, with considerable success. Kozloski was also knowledgeable of Verizon's products and services. He was subsequently offered the job.

Suskind did not inform Snik that he had not been selected, despite company policy requiring internal candidates to be notified and given feedback when a position is filled; Snik learned of the decision only through other employees. Soon thereafter, he sent a message to the human resources department. He stated that he had been treated in an "unprofessional manner" and alleged that he had not been considered a "viable candidate" because of his age. He indicated that he was considering filing a formal complaint with the state equal employment agency.

An intra-company investigation was initiated by the human relations department, which contacted Suskind to inquire about the decision to reject Snik. Suskind explained

4

that Snik's supervisors had described his "leadership qualities [as] not . . . up to par" and that Snik had not "project[ed] the aggressiveness necessary for th[e] . . . position" during the telephone interview.  Suskind acknowledged that he had not notified Snik directly that the position had been filled, and offered to do so.  Suskind subsequently contacted Snik, apologized for his oversight, and informed him that the position had required someone who was "aggressive" and "dynamic."

Company officials concluded that no age discrimination had occurred.  They offered to provide Snik with leadership training to prepare him for a management position.  Snik refused.

He instead filed a formal complaint of age discrimination with federal and state equal employment agencies.  The complaint was subsequently dismissed, after investigation, based on a lack of "probable cause . . . to credit the allegations of unlawful discrimination."

## II.

Claims of age discrimination proceed under the familiar framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The burden initially rests on the plaintiff to show that he or she was qualified for the position but was rejected in favor of a younger individual.  The employer must then offer a "legitimate, nondiscriminatory reason" for the plaintiff's rejection.  The burden than shifts back to the plaintiff to point to evidence that the articulated reason should be disbelieved or that an improper reason

5

was "more likely than not a motivating or determinative cause" of the decision. *Fuentes v. Perskie*, 32 F.3d 759, 763-65 (3d Cir. 1994) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509-10 (1993); *McDonnell Douglas*, 411 U.S. at 802).[1]

It is not disputed, for purposes of this appeal, that Snik satisfied his initial burden and that the reasons given by Verizon for its hiring decision – Snik's lack of "leadership qualities" and Kozloski's qualifications – are legitimate and nondiscriminatory. The sole question is whether the evidence could support a finding of pretext. The District Court held, and we agree, that it cannot.

Nothing in the record plausibly suggests that the proffered reasons for Snik's rejection were fabricated or that Verizon was actually motivated by discriminatory animus. *See id.*; *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101-02 (2003). The company posting and Suskind's initial description of the position of business sales manager plainly indicate that leadership ability is essential to the job. Company officials consistently cited an apparent lack of this quality as the basis for their decision to reject Snik, and the same concern had previously been expressed by Snik's supervisor, who had suggested that Snik needed to "pursue more roles in leading the team." There is no reason to believe that this explanation represents a post hoc rationale for the company's decision. *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 331-32 (3d Cir. 1995)

---

[1]The same analysis applies to claims under both the ADEA and the PHRA. *See, e.g.*, *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 509 n.2 (3d Cir. 2004).

(noting that courts should not question wisdom of employer's reliance on a certain explanation for action, but only whether explanation is honest) (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 528-33 (3d Cir. 1992)).

Use of the terms "aggressive" and "dynamic" by company officials to describe the appropriate person for the position does not betray a discriminatory intent. These words are not necessarily synonymous with "youth," and there is not any indication that they were used in this way. The incoming business sales manager would be expected to "rebuild" a team of representatives and ensure its success in achieving sales quotas. By its very nature, the job required someone who was self-motivated and capable of inspiring others: in other words, someone who was "aggressive" and "dynamic." These terms do not, in this context, imply age animus. *Cf. Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1362 (11th Cir. 1999) (holding that remark by supervisor that he wanted to promote "*younger* aggressive men" suggested pretext in light of supervisor's "pattern of demoting and firing numerous older managers in favor of younger replacements") (emphasis in original).

Nor do alleged inconsistencies in the hiring process reflect discrimination. Suskind's failure to notify Snik that the position had been filled was apparently the result of a mistake, which was corrected soon after it was identified. The refusal to grant Snik an in-person interview was consistent with, or at least not violative of, company policy. And, contrary to Snik's assertions, there is no evidence that Verizon officials failed to

7

give full consideration to Snik's credentials and prior experience.  They simply found them to be lacking in comparison to Kozloski's.  *See Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) ("The fact that an employee disagrees with an employer's evaluation of him does not prove pretext."), *overruled on other grounds by Hicks*, 509 U.S. 502.

Indeed, the record supports the conclusion that Kozloski was better qualified for the position than Snik.  Most of Snik's prior supervisory experience came while employed for a company providing municipal public telephone services; he had no experience in supervising sales representatives in the wireless telecommunications industry.  In contrast, Kozloski had managed a direct business sales team for a competitor of Verizon for five years.  He had built the team "from scratch" and was regarded as the "top sales manager."  Kozloski had demonstrated leadership qualities in the same position that Verizon wished to fill, and the company could justifiably regard him as better qualified than Snik, despite the latter's years of experience in related fields.  *See Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 622 (7th Cir. 2001) (upholding summary judgment for employer when, although plaintiff had more overall experience in field, employer reasonably believed that another person who "had worked in a nearly identical job to that of the desired position" was better qualified); *see also Brewer*, 72 F.3d at 332 ("[W]e do not sit as a super-personnel department that reexamines an entity's business decisions.") (quoting *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992)).

8

We agree with the District Court that Snik failed to produce adequate evidence to support his claim of age discrimination.  Summary judgment was properly granted in favor of Verizon.[2]

Accordingly, we will affirm the order of the District Court.

---

[2]We have considered and rejected Snik's other arguments:  that the District Court abused its discretion in refusing to grant a continuance during summary judgment proceedings, *see* FED. R. CIV. P. 56(f), and in denying a motion for reconsideration based on new evidence, *see* FED. R. CIV. P. 59(e).  Snik claimed that a continuance was necessary to depose Suskind; however, as the District Court correctly noted, Snik had "ample opportunity" (nearly six months) to subpoena and depose Suskind during pre-trial discovery but chose not to do so, apparently because of the expense involved.  *See Lunderstadt v. Colafella*, 885 F.2d 66, 71-72 (3d Cir. 1989) (concluding that the district court had not abused its discretion in determining that "more discovery by plaintiffs was unwarranted primarily because they already had a substantial amount of time to conduct such discovery and had failed to do so").  Snik concedes that the "new" evidence that he wished to introduce on reconsideration was previously available but, for reasons that are not adequately explained in the record or briefs, was simply not included with the materials submitted in opposition to the motion for summary judgment.  *See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) ("Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration.").  We see no error in the District Court's denial of the request for a continuance or motion for reconsideration.