NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-3085

_____

LORRAINE A. GRESS,
                              Appellant

v.

TEMPLE UNIVERSITY HEALTH SYSTEM

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil Action No. 2-13-cv-05414)
District Judge: Honorable J. William Ditter, Jr.

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 28, 2019

_____

Before: CHAGARES, GREENAWAY, JR., and GREENBERG, *Circuit Judges*.

(Opinion Filed:  September 19, 2019)

_____

OPINION*

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Appellant Lorraine Gress appeals the District Court's grant of summary judgment for Appellee, Temple University Health System ("Temple"). On appeal, Gress argues that the District Court failed to view facts in a light most favorable to her, the nonmoving party, and erroneously concluded that genuine disputes of material fact did not exist with respect to her discrimination claims. For the foregoing reasons, we will affirm the District Court's grant of summary judgment on all claims.

## I.      Factual Background/Procedural History

Temple hired Gress in 1996 as a medical assistant. In 1998, Gress was promoted to office manager. In 2007, Gress was promoted to regional manager, and in 2008, she was promoted to regional director. After fourteen years of employment, in January 2010, Gress complained to her human resources manager about her supervisor, Renee Reedman's behavior. According to Gress, Reedman made racially insensitive comments, such as calling African-American employees "porch monkeys," and referred to a lesbian employee as a "dyke." App. 3. Additionally, Reedman made comments about Gress's weight in front of coworkers, referenced her daughter's teen pregnancy, and stated that Gress's home was stuck in the eighties. Human resources investigated the complaint and Gress met with Reedman and Dr. Mankin, the CEO of Temple, to discuss and resolve the issues.

Shortly thereafter in March of 2010, Gress notified human resources that Reedman

had embarrassed her by referring to her daughter's ex-boyfriend as Gress's son-in-law. Despite Gress having lodged these prior complaints, Reedman provided Gress with a favorable performance review. In March 2011, Gress complained again about Reedman after Reedman had told another employee, Linda King, that King could not have taken a position at another location because of the color of her skin and the fact that such a practice is racist. Human resources investigated the complaint and Reedman apologized to King. Human resources also held a mediation for Gress and Reedman hoping to improve their communication with each other. During her deposition, Gress stated that she believed Reedman treated everyone equally regardless of disability or age.

Gress went on Family and Medical Leave Act ("FMLA") leave from May 9, 2011 until August 22, 2011, as she underwent surgery. During this leave, David Reppert, the controller for Temple, found a cash discrepancy in the northeast location where Linda King was the office manager. King was responsible for receiving payments from patients and depositing them in the appropriate Temple account. After an internal investigation by human resources manager, Brenda Woods, it was confirmed that cash was missing over a three-year period, totaling $130,000. As the regional director, Gress was King's supervisor and ultimately responsible for auditing King's financial work. Gress's auditing of King's work failed to detect any inconsistent deposits. Following the investigation, King was terminated.

When Gress returned to work following FMLA leave, she was interviewed by Woods and James Frank, the director of internal audit. She admitted that she had allowed

3

office managers, including King, to do two things—select which deposit records would be audited and not require confirmation faxes of deposits from the northeast branch. App. 65. Gress was advised that she was being investigated for involvement in the theft. Although Gress was told not to discuss the investigation with anyone, Gress discussed the investigation with Reedman and Dr. Mankin. Gress was also advised not to remove any documents, yet Gress removed King's original bank reconciliation documents from a locked cabinet for four days and showed them to Reedman and three regional directors at an operations meeting where she had discussed the investigation. Gress stated that the documents showed that King was reconciling and Gress was auditing. App. 165.

On September 14, 2011, Woods met with Gress and suspended her pending further investigation. Gress's employment was then terminated on October 10, 2011 based on misrepresenting the veracity of fax deposit confirmations from the bank, engaging in gross neglect of job duties based on her failure to audit, being insubordinate by discussing the ongoing investigation, and interfering with an ongoing investigation by removing important financial documents without authorization.

Following her dismissal, Gress brought claims of discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634; the FMLA, 29 U.S.C. § 2601; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213, 47 U.S.C. § 5; and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 955(a) and (e). She also brought claims of retaliation under the FMLA, the PHRA, and Title VII of the Civil Rights Act of 1964 ("Title VII"). The

4

District Court granted summary judgment to Temple on all claims. Appellant timely appeals only her Title VII, ADEA, and corollary age discrimination and retaliations claims under the PHRA.

## II. Discussion[1]

Gress argues that the District Court erred by not viewing the facts in the light most favorable to her, the nonmoving party, and failing to conclude that genuine disputes of material fact exist. This Court exercises plenary review over a District Court's grant of summary judgment. *Aruajo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 156 (3d Cir. 2013). This Court can affirm a grant of summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id*. The Court must view the facts and evidence presented on the motion in the light most favorable to the opposing party. *Id*. at 255. In attempting to defeat summary judgment, "[s]peculation and conclusory allegations do not satisfy [the non-moving party's] duty." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999).

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over this matter under 28 U.S.C. § 1291. We exercise pendent jurisdiction over Appellants' claims arising under the PHRA, pursuant to 28 U.S.C. § 1367.

*A. Age Discrimination Claim*

Gress argues that she provides enough evidence to overcome summary judgment with respect to her ADEA and PHRA age discrimination claims.[2] The ADEA establishes that it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

As Gress does not have any direct evidence of age discrimination, she must prove it through circumstantial evidence. *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009). Under the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, which this Court applies to ADEA claims, Gress must provide enough evidence to establish a prima facie case of discrimination. 411 U.S. 792, 803 (1973); *Smith*, 589 F.3d at 689 (3d Cir. 2009). Gress must first show that she "is forty years of age or older." *Smith*, 589 F.3d at 689 (3d Cir. 2009). "[S]econd," she must show "that the defendant took an adverse employment action against the plaintiff" and "third, that [she] was qualified for the position in question." *Id.* Finally, Gress must show that she "was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Id.* If she satisfies these four prongs, the "burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action." *Id.* at 690. "If the employer does so, the burden of

---

[2] Both the ADEA and the PHRA utilize the same legal standard. *Glanzman v. Metropolitan Management Corp.*, 391 F.3d 506, 509 n.2 (3d Cir. 2004).

production returns to [Gress] to demonstrate that the employer's proffered rationale was a pretext for age discrimination." *Id.*

The Supreme Court added a gloss to this standard in *Gross v. FBL Financial Services*, 557 U.S. 167 (2009), where it observed that "shifting the burden of persuasion to an age discrimination defendant is improper because the plain language of the ADEA requires the plaintiff to prove that the defendant took the adverse employment action, 'because of [the plaintiff's] age.'" *Smith*, 589 F.3d at 690 (quoting *Gross*, 557 U.S. at 176). We reconciled *Gross* with our jurisprudence in *Smith*, noting that *Gross* requires the plaintiff to "prove that age was the but-for cause of the defendant's adverse employment action." *Smith*, 589 F.3d at 691 (internal citation omitted). Therefore, we still follow the *McDonnell Douglas* framework to analyze ADEA claims with this gloss in mind, as the burden returns to the plaintiff in the analysis. *Id.*

As the District Court noted, Gress established three elements of her prima facie case: she was 61 years old; she was qualified for her position; and she was terminated. Assuming *arguendo* that she established the fourth element, Gress still cannot overcome Temple's legitimate non-discriminatory reasons for her termination—her failed audit supervision resulting in a loss of $130,000, misrepresentations of fax deposit confirmations, insubordination by refusing to follow confidentiality instructions during her active investigation, and removing documents without authorization. Any of the aforementioned reasons by itself could serve as a legitimate ground for removal.

To establish pretext, Gress must provide enough evidence such that a factfinder could "infer that *each* of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action . . . ." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (internal citations and citations omitted). Gress "must prove not that the illegitimate factor was the *sole* reason for the decision, but that the illegitimate factor was a *determinative* factor in the adverse employment decision." *Id*. In short, "but for the protected characteristic"—here, Gress's age—she would not have been fired. *Id*. Gress does not assert any facts that establish this or suggest evidence of age discrimination. She argues that the District Court incorrectly found that she was told not to remove documents or discuss the investigation. Even so, being the supervisor responsible for the loss of $130,000 is a sufficient ground for termination when the auditing function was admittedly deficient. Gress does not point to any other evidence that supports her age discrimination claim. Therefore, the District Court was correct in finding that Gress does not allege sufficient facts to establish a prima facie case of age discrimination under either the ADEA or PHRA.

## B. Retaliation Claim

Gress also argues that the District Court erred in deciding that she did not make out a claim of retaliation under Title VII and the PHRA.[3] Under the *McDonnell Douglas*

---

[3] Title VII's anti-retaliation provision forbids an employer from "discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title

burden-shifting framework, a plaintiff asserting a retaliation claim under either Title VII or the PHRA must first establish a prima facie case by showing (1) she engaged in protected activity; (2) suffered adverse action by the employer; and (3) there is a causal connection between the employer's activity and the employer's adverse action. *Fogelman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567–68 (3d Cir. 2002); *see also Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015). If Gress makes these showings, "the burden of production of evidence shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action. *Id*. "A plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (quoting *Burlington Northern & Santa Fe Ty. Co. v. White*, 548 U.S. 53, 68 (2006)).

The first prong of a prima facie retaliation claim can be satisfied by a showing of complaints to the employer. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). For Gress's complaints to qualify as protected, she must have held an objectively

---

VII]." 42 U.S.C. § 2000e–3(a). The PHRA, which we generally interpret consistently with Title VII, likewise forbids employers from retaliating against employees for asserting their rights under the PHRA *See Fogleman v. Mercy Hosp.*, 283 F.3d at 567 ("The language of the PHRA is . . . substantially similar to [Title VII and other federal] anti-retaliation provisions, and we have held that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different . . . .") (citing *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996)).

reasonable, good faith belief that her employer's activity was unlawful under Title VII.[4]

She need not prove the merits of the underlying discrimination complaint, but a reasonable person must be able to conclude that there was unlawful discrimination under Title VII. *Moore*, 461 F.3d at 344.

Although this Court acknowledges "the message being conveyed rather than the means of conveyance" and takes into account "making complaints to management" in determining whether Title VII's opposition clause is triggered, the activity in question does not rise to level of a Title VII violation. *Curay-Cramer v. Ursuline Acad.*, 450 F.3d 130, 135 (3d Cir. 2006). "Case law has established that opposition to an illegal employment practice must identify the employer and the practice—if not specifically, at least by context." *Id*. As a preliminary matter, Gress asserts no facts identifying specific behavior by Reedman that would qualify as unlawful activity. Gress instead makes conclusory statements about Reedman's actions, claiming she engaged in racial harassment and discrimination, gender harassment and discrimination, religious discrimination, and disability discrimination. Gress's complaints about Reedman's behavior were not about activity she believed to be illegal under Title VII. Here, Gress

---

[4] Because the District Court concluded that Gress failed to satisfy the first prong with respect to her theories of relief, it never addressed the adverse employment action and causation prongs of her retaliation claims. The prongs are conjunctive, therefore Gress's failure to satisfy the first prong causes her claim to fail. Consequently, we do not address those issues here on appeal in the first instance. Rather, we consider only the District Court's treatment of the "protected activity" prongs of Gress's retaliation claims. *Fogleman*, 283 F.3d at 568.

also fails to complain about disparate treatment based on her sexual orientation, race, or religion. She never put forth evidence of an illegal employment practice, only asserting that Reedman demonstrated "racist actions" and "invidious discrimination." Appellant's Br. at 32, 33.[5]

As the District Court noted, these statements are rude, but not illegal. App. 17. As Gress has not put forth sufficient evidence to meet the first prong of a retaliation claim under Title VII and the PHRA and show she engaged in protected activity, she cannot make out a prima facie case for retaliation.

### III. Conclusion

Gress cannot induce this Court to reverse the District Court's order. The facts asserted, even when considered in the light most favorable to her are insufficient. She cannot establish a prima facie case for age discrimination under the ADEA or the PHRA. She also cannot establish a prima facie case for her retaliation claim under Title VII or the PHRA. For the above reasons, we will affirm the District Court's grant of summary judgment.

---

[5] Assuming Reedman told Linda King that she could not be considered for a job because she was African-American, Gress did not suggest at any point that she thought Reedman had discriminated against King, or that Reedman was in a hiring position to act discriminatorily with respect to King's interest in another location. Regardless, Gress does not assert a third-party complaint or cause of action. *Fogleman*, 283 F.3d at 571.

11