**Rox–Ann REIFER, Plaintiff**

v.

**COLONIAL INTERMEDIATE UNIT 20, Defendant.**

**Civil Action No. 4:05–1906.**

United States District Court, M.D. Pennsylvania.

Nov. 7, 2006.

Donald P. Russo, Donald P. Russo, Attorney at Law, Nuria Sjolund, Bethlehem, PA, for Plaintiff.

John E. Freund, III, King Spry Herman Freund & Faul, LLC, Bethlehem, PA, for Defendant.

## MEMORANDUM AND ORDER

MANNION, United States Magistrate Judge.

Before the court is the defendant's motion for summary judgment. For the fol-

lowing reasons, the court will grant the motion.

## I. Procedural History

The plaintiff commenced this action on September 21, 2005, by filing her complaint. (Doc. No. 1.) In the complaint, the plaintiff accuses the defendant of disability-based discrimination and related offenses. She raises six counts. First, the plaintiff alleges that the defendant discriminated against her in violation of the Americans with Disabilities Act of 1990 ("ADA"), Pub.L. No. 101–336, 104 Stat. 327 (codified as amended at 42 U.S.C. § 12101 *et seq.* (2006)), by refusing to reasonably accommodate her disability even though she would have been able to perform the essential functions of her job with a reasonable accommodation. Second, the plaintiff alleges that the defendant discriminated against her in violation of the Family Medical Leave Act of 1993 ("FMLA"), Pub.L. No. 103–3, 107 Stat. 6 (codified as amended at 29 U.S.C. § 2601 *et seq.* (2006)), by failing to advise her of her rights under the FMLA while she was on protected leave. Third, the plaintiff alleges that the defendant unlawfully retaliated against her because of her exercising of her rights under the ADA and FMLA. Fourth, the plaintiff alleges that the defendant discriminated against her in violation of the Pennsylvania Human Relations Act of 1955 ("PHRA"), Pub.L. No. 744, Pa. Laws 222 (codified as amended at 43 Pa. Con. Stat. Ann. § 955 (West 2006)), by refusing to reasonably accommodate her disability even though she would have been able to perform the essential functions of her job with a reasonable accommodation. Fifth, the plaintiff alleges that the defendant unlawfully retaliated against her by terminating her for filing a claim under Pennsylvania's Workers' Compensation Act of 1915 ("WCA"), Pub.L. No. 736, Pa. Laws 338 (codified as amended at Pa. Stat. Ann. tit. 77, § 1 *et seq.* (West 2006)). Finally, the plaintiff alleges that the defendant discriminated against her in violation of the Pregnancy Discrimination Act of 1978 ("PDA"), Pub.L. No. 95–555, 92 Stat. 2076 (codified at 42 U.S.C. § 2000e(k) (2006)),[1] by taking an adverse employment action against her because she was pregnant.

In response, on December 9, 2005, the defendant filed an answer denying the allegations and raising seventeen affirmative defenses. (Doc. Nos. 9 & 10.) The court entered a scheduling order on December 21, 2005, which set a deadline for discovery on July 21, 2006, and trial for November 13, 2006. (Doc. No. 11.)

On September 15, 2006, the defendant moved for summary judgment and submitted a brief and a concise statement of material facts in support of the motion; three days later, the defendant submitted supporting exhibits. (Doc. Nos. 17, 18, & 19.) The defendant raises six arguments. First, the defendant contends that the plaintiff has failed to state a claim under the ADA. Second, the defendant contends that the plaintiff has failed to state a claim under the FMLA. Third, the defendant contends that the plaintiff has failed to state a claim for retaliation in violation of the ADA, the FMLA, and the WCA. Fourth, the defendant contends that the plaintiff has failed to state a claim under the PHRA. Fifth, the defendant contends that the plaintiff has failed to state a claim under the PDA. Finally, the defendant contends that the plaintiff may not seek punitive damages from the defendant.

---

**1.** The PDA amended Title VI I of the Civil Rights Act of 1964, Pub.L. No. 88–352, 78 Stat. 253 (codified as amended at 42 U.S.C. § 2000e *et seq.*).

On October 16, 2006, the plaintiff filed a brief in opposition to the defendant's motion for summary judgment, which was followed on October 18, 2006, by an appendix of exhibits. (Doc. Nos. 23 & 24.) The plaintiff rejects the defendant's arguments and contends that she has made out a prima facie case of discrimination under the ADA, the FMLA, the PHRA, and the PDA, and retaliation in violation of the ADA, the FMLA, and the WCA. However, she concedes that Pennsylvania law prohibits her from seeking punitive damages against the defendant.

The matter having been briefed, the defendant's motion is now ripe for disposition. The court has original jurisdiction over the claims brought under the ADA, FMLA, and PDA pursuant to 28 U.S.C. §§ 1331 and pendent jurisdiction over the claims brought under the PHRA and the WCA pursuant to 28 U.S.C. § 1367.

## II. Standard for Summary Judgment

The defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Summary judgment is appropriate when the pleadings and any supporting materials, such as affidavits and other documentation, show that there are no material issues of fact to be resolved and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *see Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990). Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, "Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548; *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Pastore v. Bell Tel. Co. of Pennsylvania*, 24 F.3d 508, 511 (3d Cir.1994) (quoting *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992)). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of any material fact, but the nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in the pleadings. *Celotex Corp.*, 477 U.S. at 323, 325, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Young v. Quinlan*, 960 F.2d 351, 357 (3d Cir.1992).

To determine whether the nonmoving party has met its burden, the court must focus on both the genuineness and the materiality of the factual issues raised by the nonmovant. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 242, 247–48, 106 S.Ct. 2505 (emphasis in original). A dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.* at 250, 106 S.Ct. 2505. A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus.*

*Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). All inferences, however, "should be drawn in the light most favorable to the non-moving party, and where the nonmoving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore,* 24 F.3d at 512 (quoting *Big Apple BMW, Inc. v. BMW of N. America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993)).

### III. Discussion

#### A. Factual Background

In accordance with the standard governing summary judgment, the court has compiled the following factual background to the case by which the defendant's motion will be considered. It is based on the parties' statements of material facts (Doc. Nos. 17 & 23) and, where the court has found that greater detail is necessary to elucidate the dispute, the parties' exhibits.[2] In any case of conflict between the defendant's statement of facts and the plaintiff's counter-statement, the court has, only for the purpose of deciding the instant motion, accepted the plaintiff's version as true.

The plaintiff began working for the defendant on August 24, 2001, as a special education supervisor. On September 5, 2003, the plaintiff was seriously injured when she tripped on a plastic floor mat at work. Because of her pain, the plaintiff went to the emergency room, but was not admitted to the hospital. She continued to suffer pain in her back and arms, as well as chronic headaches, which caused her to not return to work and to seek treatment from various doctors. The plaintiff filed for compensation under the WCA because of her injury. (Doc. Nos. 17 & 23.)

The plaintiff stated that she did not know how she could return to work because of her physical condition and medications. She was also unsure when, or even if, she could return to work. On December 12, 2003, the defendant's executive director wrote to the plaintiff, asking her to notify him of her ability to return to work after her next doctor's appointment on December 29, 2003, and expressing disappointment at the plaintiff's alleged uncooperative behavior with the worker's compensation staff. (Doc. No. 19 ex. 5.) At the appointment, with a workers' compensation physician who completed an independent medical examination, the doctor concluded that the plaintiff was fully recovered and could return to her regular job without any restrictions. But the plaintiff's own physician did not find that the plaintiff was able to return to work, and on her own physician's advice the plaintiff refused to return to work. The plaintiff discussed the matter with the defendant's director of human resources, who told her that her job was in jeopardy. She told the director that she was in too much pain to return to work.

On January 6, 2004, the executive director wrote to the plaintiff to offer her a position as supervisor of special education to begin on January 12, 2004. The next day, the director of human resources called the plaintiff to determine what the defendant could do to accommodate the plaintiff's return to work. The plaintiff told the director of human resources that

---

**2.** The statements of fact are derived from the exhibits, as required by the Local Rule of Court 56.1. Because the factual background is taken mostly from the statements, the court does not cite to those Document Numbers. It will cite to facts taken directly from the exhibits.

she did not know when she could return to work because of her current medical condition, but she would discuss it with her physicians. The director told the plaintiff that her job was in jeopardy. The plaintiff told the director of human resources in a letter dated January 9, 2004, that she could not return to work until her physicians released her from their significant restrictions on her activities. (Doc. No. 19 ex. 2 no. 1.) On January 16, 2004, the plaintiff forwarded to the director of human resources her physician's note stating that the plaintiff was disabled until the next examination. The plaintiff's cover letter stated that she was disabled and unable to return to work. (Doc. No. 19 ex. 2 no. 2.) On January 29, 2004, the plaintiff's physician wrote that the plaintiff was "not fully recovered from" her injury. (Doc. No. 19 ex. 1 no. 6.)

On January 21, 2004, the executive director wrote to the plaintiff to discuss the plaintiff's return to work. He noted that the plaintiff had not gotten in contact with the director of human resources after she had told the director she would do so upon discussing her ability to return to work with her physicians. He asked the plaintiff to provide to the defendant a list of any accommodations that would enable the plaintiff to return to the defendant, to be submitted by January 28, 2004. The letter also warned the plaintiff that if she remained uncooperative in their attempts to accommodate her, the defendant would consider terminating her. (Doc. No. 19 ex. 1 no. 11.) The plaintiff never responded to the executive director's letter, apparently because she felt that her response to the director of human resources, stating that she was unable to return to work, was sufficient. In addition, she felt that responding "just was not a reasonable thing I could do at that point in time." (Doc. No. 19 ex. 1 p. 47.) As of January 2004, the plaintiff believed she could not return

to work regardless of any accommodation. (Doc. No. 19 ex. 1 p. 35.) She "was not physically able to return to [her] job and perform [her] duties. [She] had not been released by [her] treating physicians." (Doc. No. 19 ex. 1 p. 48.)

On February 25, 2004, the defendant provided the plaintiff with a notice of a hearing, scheduled originally for March 11, 2004, which would determine whether the plaintiff would be terminated from her job. The hearing was rescheduled until April 15, 2004, so that the plaintiff could retain counsel. In a letter dated March 30, 2004, the plaintiff's counsel wrote to the defendant's counsel to notify it of his retention and that the plaintiff could not attend the hearing because she was twenty-two weeks pregnant and, as of the date the letter was written, in the hospital because of pregnancy complications. (Doc. No. 23 ex. I.) The hearing was again rescheduled for May 18, 2004, but the plaintiff remained in the hospital and requested another postponement. (Doc. No. 23 exs. J & K.) In a letter from the plaintiff's counsel to the defendant's counsel concerning the hearing, the plaintiff's counsel forwarded a physician's letter stating that, because of the plaintiff's medical problems, she would not work until further notice. (Doc. No. 19 ex. 6.)

The hearing was rescheduled for July 8, 2004. In a letter dated July 5, 2004, the plaintiff's counsel informed the defendant that neither of them would attend the hearing because it appeared that the defendant had violated the plaintiff's rights under the ADA and FMLA and the plaintiff intended to vindicate her rights in federal court. (Doc. No. 23 ex. L.) The hearing was held without the plaintiff. (Doc. No. 19 ex. 1 no. 12.) As a result of the hearing, on August 6, 2004, the hearing officer recommended to the defendant's board that the plaintiff be terminated. On

August 25, 2004, the defendant terminated the plaintiff's employment. The plaintiff was notified the next day.

Subsequent to the hearing, the plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination. On October 12, 2004, the plaintiff's counsel forwarded a copy of the EEOC complaint to the defendant's counsel. The EEOC did not serve the complaint on the defendant, however, until May 25, 2005.

At some point in 2004, the plaintiff became pregnant. She did not directly discuss the pregnancy with the defendant. The plaintiff's physician provided the plaintiff with a letter, dated February 16, 2004, and captioned "To whom it may concern," which stated that, because of the plaintiff's high-risk pregnancy, she could not return to work until six weeks after delivery. The delivery occurred in May 2004. (Doc. No. 19 ex. 1 no. 7.) The plaintiff provided her attorney with the letter, but there is no indication that the plaintiff's attorney forwarded the letter to the defendant. (Doc. No. 19 ex. 1 pp. 29–31.)

As mentioned above, the plaintiff's counsel corresponded with the defendant in March 2004 concerning the plaintiff's pregnancy and informing the defendant that the plaintiff was in the hospital because of complications related to the pregnancy.[3] The defendant and its director of human resources acknowledge that they knew of the plaintiff's pregnancy in March 2004, but deny any knowledge of the pregnancy before March 2004, including because of receipt of the plaintiff's February letter.

On May 5, 2005, the plaintiff entered into a Compromise and Release Agreement, By Stipulation, Pursuant to Section 449 of the Workers' Compensation Act. (Doc. No. 19 ex. 1 no. 4.) In the agreement, the plaintiff acknowledged that she was "totally disabled since the date of injury." (Doc. Nos. 17 & 23 ¶¶ 47.) The agreement also stated:

This Agreement forever releases the Colonial Intermediate Unit # 20 and Old Republic Insurance Company c/o School Claims Service, LLC, from the future payment of any indemnity (wage loss or specific loss) and/or medical benefits. Defendant will pay Claimant $115,000.00 as final settlement of any and all claims arising out of Claimant's work-related injury of September 5, 2003. Claimant is entitled to no future benefits, either wage loss, specific loss, or medical, after the date this Agreement is approved by the Worker's Compensation Judge.

(Doc. Nos. 17 & 23 ¶¶ 46.) As part of the agreement, the plaintiff resigned from the defendant.

### B. The ADA and the PHRA (Counts One and Four)[4]

The ADA provides, in part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employ-

---

3. The plaintiff is only able to state that "[t]he record is not clear that this [the March letter] was the first notification of her pregnancy" because of her physician's February letter. (Doc. No. 23 ¶ 42.)

4. The "analysis of an ADA claim applies equally to a PHRA claim." *Taylor v. Phoenix-*

*ville Sch. Dist.,* 184 F.3d 296, 306 (3d Cir. 1999) (citing *Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir.1996)). Therefore, the court will consider both claims together. *Cf. Williams v. Philadelphia Hous. Auth. Police Dep't,* 380 F.3d 751, 761 n. 6 (3d Cir.2004).

ment." [5] 42 U.S.C. § 12112(a). An employer violates the ADA if it is " 'actually motivated' " to discriminate against an employee on the basis of the employee's disability and the disability had a "determinative influence" on the discriminatory action. *Hazen Paper Co.*, 507 U.S. at 610, 113 S.Ct. 1701; *see Raytheon Co. v. Hernandez*, 540 U.S. 44, 52, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003); *Watson v. Southeastern Pennsylvania Transp. Auth.*, 207 F.3d 207, 214–15 (3d Cir.2000). In re-

viewing a motion for summary judgment to determine if there is a genuine issue of material fact concerning whether an employer illegally discriminated against an employee, the court must apply the test articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). [6]

5. A "covered entity" is "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). The parties do not dispute that the defendant is a "covered entity."

6. The plaintiff contends that she can proceed under either a mixed-motives or pretext theory of discrimination under the ADA because she need not decide at this point in the case. She further argues that the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) "removes the need for direct evidence of discrimination." (Doc. No. 23.) Before *Costa*, disparate treatment cases were misleadingly dichotomized into mixed-motives or pretext cases. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 n. 4 (3d Cir.2003) ("Referring to these theories as though they embodied two distinct kinds of illegal conduct, or that they encompass two mutually exclusive legal theories is as troublesome as it is misleading."); *Watson*, 207 F.3d at 214 n. 5 (3d Cir.2000) ("The 'pretext' and 'mixed-motive' labels are misleading.") In a mixed-motives case, the court analyzed the evidence under the test announced by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), *abrogated in part and codified in part by* § 107(a) of the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (codified as amended at 42 U.S.C. § 2000e–2(m)), which required "that a plaintiff need only show that the unlawful motive was a 'substantial motivating factor' in the adverse employment action." *Watson*, 207 F.3d at 215. (The court here need not elaborate on the intricacies of the *Price Waterhouse* analysis.) In a pretext case, the court analyzed the evidence under the *McDonnell Douglas* test, in which the plaintiff must prove

"that consideration of the impermissible factor was 'a determinative factor' in the adverse employment action" and which is described above. *Id.*

The distinction between the two theories lay in the type of evidence used to prove disparate treatment. In a mixed-motives case, the plaintiff relied on direct evidence. *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 512 (3d Cir.2004); *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337–38, 337 n. 2 (3d Cir.2002). Direct evidence is a "high hurdle," *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir.1998) (quoting *Walden v. Georgia–Pac. Corp.*, 126 F.3d 506, 513–14 (3d Cir.1997), *cert. denied*, 523 U.S. 1074, 118 S.Ct. 1516, 140 L.Ed.2d 669 (1998)), that the plaintiff can meet only by proffering "direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. 1775 (O'Connor, J., concurring); *see Fakete*, 308 F.3d at 338; *Connors*, 160 F.3d at 976. "[T]he direct evidence must be 'so revealing of. discriminatory animus that it is not necessary to rely on any presumption from the prima facie case to shift the burden of production.' " *Connors*, 160 F.3d at 976 (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir.1994)). "Such evidence 'leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it' when he made the challenged employment decision." *Fakete*, 308 F.3d at 338 (quoting *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097 (3d Cir.1995)). In contrast, in a pretext case, the plaintiff presented indirect, or circumstantial, evidence of discrimination. *Glanzman*, 391 F.3d at 512; *Fakete*, 308 F.3d at 337–38.

In *Costa*, a unanimous Supreme Court explained the effect of § 107(a) of the Civil

*Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n. 3, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003); *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir.2000) (citing *Walton v. Mental Health Ass'n. of Southeastern Pennsylvania*, 168 F.3d 661, 667–68 (3d Cir.1999); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500–01 (3d Cir.1997); *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156–58 (3d Cir.1995)). The McDonnell Douglas test "establishe[s] an allocation of the burden of production and an order for the presentation of proof in ... discriminatory-treatment cases." [7] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)) (internal omission in original).

Rights Act of 1991 on *Price Waterhouse* by holding that a plaintiff could receive a mixed-motives jury instruction after presenting direct or indirect evidence of a Title VII violation. *Costa*, 539 U.S. at 98–102, 123 S.Ct. 2148; *see id.* at 102, 123 S.Ct. 2148 (O'Connor, J., concurring). The Court in *Costa* did not treat pretext cases or disparate-treatment cases outside of Title VII. Thus, *Costa* has no impact on the *McDonnell Douglas* test in indirect evidence cases alleging violations of anti-discrimination statutes not under Title VII. Indeed, the Supreme Court and the Third Circuit Court of Appeals have entertained non-Title VII discrimination cases in which they have applied the *McDonnell Douglas* or *Price Waterhouse* tests without any reference to *Costa*. *See Raytheon Co.*, 540 U.S. at 49 & n. 3, 124 S.Ct. 513 (applying *McDonnell Douglas* to an ADA claim); *see, e.g., Turner v. Hershey Chocolate U.S.A.*, 440 F.3d 604, 611 (3d Cir.2006) (applying *McDonnell Douglas*, without referencing it, to an ADA claim); *Glanzman*, 391 F.3d at 512 & n. 3 (applying *Price Waterhouse* to an Age Discrimination in Employment Act ("ADEA") claim); *Monaco v. American Gen'l Assurance Co.*, 359 F.3d 296, 300 (3d Cir.2004) (applying *McDonnell Douglas* to an ADEA claim).

Here, the court must apply *Price Waterhouse* or *McDonnell Douglas*, depending on the type of evidence proffered by the plaintiff.

To succeed on an ADA-disparate treatment claim under the *McDonnell Douglas* test, the plaintiff must establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 506, 113 S.Ct. 2742; *Burdine*, 450 U.S. at 252–53, 101 S.Ct. 1089. A *prima facie* case requires the plaintiff to prove three elements. First, the plaintiff must establish that she is disabled within the meaning of the ADA. *Turner*, 440 F.3d at 611 (citing *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 (3d Cir.2002)); *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir.1998). Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," 42 U.S.C.

The evidence in this case is circumstantial, designed to raise an inference of discrimination, without directly showing any discriminatory animus on the part of the defendant. Consequently, the court will apply the *McDonnell Douglas* test. To the extent the plaintiff raised the issue to avoid being burdened with having to prove, under *McDonnell Douglas*, that her termination resulted *solely* from discriminatory considerations, which her brief strongly suggests, she has worried erroneously. The plaintiff discusses at length *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053 (9th Cir.2005), in which the Ninth Circuit notes that seven other circuits had adopted a standard of causation in ADA cases that requires the plaintiff to show that the discriminatory consideration was a motivating factor, not a sole cause, and that only one circuit has adopted a sole-cause standard of causation. *See* Head, 413 F.3d at 1063–64 & n. 55. But the Third Circuit, too, has rejected the sole-cause standard. *See Starceski*, 54 F.3d at 1096 n. 5 (citing *Miller v. CIGNA Corp.*, 47 F.3d 586, 596 n. 8 (3d Cir.1995) (*en banc*), overruling *Griffiths v. CIGNA Corp.*, 988 F.2d 457 (3d Cir.), *cert. denied*, 510 U.S. 865, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993)).

7. The burden of persuasion always remains upon the plaintiff. *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (citing *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089).

§ 12102(2)(A), "a record of such an impairment," *id.* § 12102(2)(B), or "being regarded as having such an impairment," *id.* 12102(2)(C).

▮▮▮ The threshold to be considered disabled under the ADA is high. *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Under 42 U.S.C. § 12102(2)(A), the major life activity pertinent to this case is "performing manual tasks." 29 C.F.R. § 1630.2(I) (2006); *see Toyota Motor Mfg.,* 534 U.S. at 195, 122 S.Ct. 681. "[T]o be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg.,* 534 U.S. at 198, 122 S.Ct. 681; *see* 29 C.F.R. § 1630.2(j). Furthermore, "[t]he impairment's impact must also be permanent or long term." *Id.; see* 29 C.F.R. § 1630.2(j)(2)(ii)-(iii). "As a matter of law, a 'transient, nonpermanent condition,' *McDonald v. Commonwealth,* 62 F.3d 92, 94–97 (3d Cir.1995), or 'a temporary, non-chronic impairment of short duration,' *Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375, 380 (3d Cir.2002), . . . fall short of substantially limiting an individual in a major life activity." *Williams,* 380 F.3d at 765. The court must evaluate the circumstances of the impairment to determine if it substantially limits the performance of manual tasks. *Id.; see* 29 C.F.R. § 1630.2(j)(2) (listing three factors a court should consider in the evaluation). Under 42 U.S.C. § 12102(2)(B), an individual has a record of impairment if she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). Finally, under 42 U.S.C. § 12102(2)(C), an individual is considered disabled if, regardless of whether she has a substantially limiting physical impairment, she is treated as though she has a qualifying disability. 29 C.F.R. § 1630.2(*l*).

Second, the employee must establish that she is a qualified individual within the meaning of the ADA. *Turner,* 440 F.3d at 611 (citing *Buskirk,* 307 F.3d at 166; *Gaul,* 134 F.3d at 580). A qualified individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Essential functions" means "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1); *see id.* § 1630.2(n)(2), (3) (discussing criteria by which to determine essentiality). "Reasonable accommodation," as pertinent here, requires an employer to make "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." *Id.* § 1630.2(*o*)(2). It includes restructuring the employee's job or modifying the employee's work schedule to enable the employee to continue working with her disability. *Id.* § 1630.2(*o*)(2)(ii); *see* "Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act," 29 C.F.R. pt. 1630, app. ("In general, an accommodation is any change in the work environment or in the way things are customarily done that enables an individual with a disability to enjoy equal employment opportunities."). An extended leave of absence may also be a reasonable accommodation under certain circumstances, but not if it is open-ended and indefinite. *Id.* pt. 1630, app.; *Conoshenti v. Pub. Serv. Elec. & Gas Co.,* 364 F.3d 135, 151 (3d

Cir.2004) ("[T]he federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned, explicitly or implicitly, that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the *near* future.") (emphasis added) (citing *Criado v. IBM Corp.*, 145 F.3d 437, 444 (1st Cir.1998)); *Walton*, 168 F.3d at 670–71; *see Fogleman v. Greater Hazleton Health Alliance*, 122 Fed.Appx. 581, 585 (3d Cir.2004) (not precedential) ("There is no evidence that permits any conclusion other than that the requested leave was for an indefinite and open-ended period of time. This does not constitute a reasonable accommodation.") (citing *Rascon v. U.S. W. Communications, Inc.*, 143 F.3d 1324, 1334 (10th Cir.1998); *Peter v. Lincoln Tech. Inst.*, 255 F.Supp.2d 417, 437 (E.D.Pa.2002); *Shafnisky v. Bell Atl., Inc.*, 2002 WL 31513551, *11 (E.D.Pa. Nov.5, 2002) (not reported)).

An employer need not provide a reasonable accommodation if it would incur "undue hardship" by providing the accommodation. 42 U.S.C. § 12112(b)(5)(A). A hardship is undue if the employee would encounter significant difficulty or incur significant expense in accommodating the employee. 29 C.F.R. § 1630.2(p)(1); *see id.* § 1630.2(p)(2) (listing factors to be considered).

 Finally, the plaintiff must establish that she has suffered an "adverse employment decision as a result of discrimination." *Turner*, 440 F.3d at 611 (citing *Buskirk*, 307 F.3d at 166; *Gaul*, 134 F.3d at 580). An "adverse employment decision" includes an employer's failure to accommodate, reasonably, the employee's disability. *Williams*, 380 F.3d at 761 (citing *Taylor*, 184 F.3d at 306). An employer also has a duty to engage, in good faith, in an "interactive process" with the employ-

ee. *Id.* at 771 (citing *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000); *Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir.1997)); *see* 29 C.F.R. § 1630.2(*o*)(3). The interactive process allows the employer to ascertain whether the employee is disabled and discuss an appropriate accommodation. *Id.* To show that an employer failed to undertake the interactive process in good faith, an employee must show:

1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Id.* at 772 (quoting *Taylor*, 184 F.3d at 319–20). In respect of the second element, the request for an accommodation need not be formal or mention specifically the ADA or "reasonable accommodation," but the employee or someone on her behalf "must make clear that the employee wants assistance for his or her disability. In other words, the employer must know of both the disability and the employee's desire for accommodations for that disability." *Taylor*, 184 F.3d at 313 (citing 42 U.S.C. § 12112(b)(5)(A)). With respect to the fourth element, the employee must show that a reasonable accommodation, in fact, existed. *Id.* (citing *Donahue v. Consol. R. Corp.*, 224 F.3d 226, 234 (3d Cir. 2000); *Taylor*, 184 F.3d at 317).

 If the plaintiff makes her *prima facie* showing, there is a presumption of discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 506, 113 S.Ct. 2742 (citing *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089). The burden then shifts to the defendant to rebut the presumption by "produc[ing] evidence that the plaintiff was rejected, or

someone else was preferred, for a legitimate, nondiscriminatory reason." *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (citing *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089). The defendant's burden is "relatively light." *Tomasso v. Boeing Co.,* 445 F.3d 702, 706 (2006) (citing *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994)). If the defendant produces evidence of a nondiscriminatory reason for the challenged conduct, the presumption "drops from the case." *St. Mary's Honor Ctr.,* 509 U.S. at 507, 113 S.Ct. 2742 (quoting *Burdine,* 450 U.S. at 255, 101 S.Ct. 1089).

 The burden of production then returns to the plaintiff to demonstrate, by a preponderance of the evidence, that the defendant's proffered reason is pretextual and "unworthy of credence." *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089). To show that the defendant's rationale is pretextual, the plaintiff must adduce evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Tomasso,* 445 F.3d at 706 (quoting *Fuentes,* 32 F.3d at 764). It is not enough for the plaintiff to show that the defendant was "'wrong or mistaken'" in his action. *Id.* (quoting *Fuentes,* 32 F.3d at 764). Rather, to defeat summary judgment, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] nondiscriminatory reasons." *Fuentes,* 32 F.3d at 765 (internal quotations and citation omitted) (bracketed material in original)

(citing *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 638 (3d Cir.1993); *Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 F.2d 509, 527, 531 (3d Cir. 1992), *cert. denied,* 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993); *Chauhan v. M. Alfieri Co., Inc.,* 897 F.2d 123, 128 (3d Cir.1990)); *see Tomasso,* 445 F.3d at 706 (citing *Kautz v. Met–Pro Corp.,* 412 F.3d 463, 467 (3d Cir.2005)); *cf. id.* at 704 ("First, [the plaintiff] has shown sufficient implausibilities and inconsistencies in [the defendant's] primary rationales to avoid summary judgment. Second, a rational factfinder could dismiss the secondary reasons as pretextual, not because they played no role in [the plaintiff's] layoff but because they cannot explain the layoff sufficiently.").

 In this case, the court finds that the plaintiff has not made a *prima facie* showing of eligibility under the ADA because she cannot establish the second and third elements. The defendant concedes, for the purposes of this motion only, that the plaintiff was disabled. It disputes, however, the second element, whether the plaintiff was a qualified individual under the ADA. The dispute between the parties focuses on two issues: whether the plaintiff could perform the essential functions of her job with any reasonable accommodation and whether a continued leave of absence is a reasonable accommodation. As to the first issue, the record is clear that the plaintiff could not perform the essential functions of her job. She told the defendant, directly and through her physicians' notes, and testified in her deposition that, prior to her termination, she was disabled and unable to return to work. She stated in the workers' compensation settlement that she was totally disabled. There was never any indication that the plaintiff was willing or able to return to work, with or without an

accommodation. Indeed, the plaintiff never even bothered to respond to the defendant's inquiries about how it could facilitate her return. Consequently, the first issue must be resolved in the negative—unless a continued leave of absence is a reasonable accommodation. As to that issue, the court finds that a continued leave of absence for an unspecified length of time is not a reasonable accommodation. As already noted, the plaintiff made no effort to find a reasonable accommodation with the defendant and left completely open-ended when she might be able to return to work. It is utterly unreasonable and not within the mandate of the ADA to expect an employer to accommodate an employee with an indefinite leave of absence.

The parties also dispute the third requirement of a *prima facie* case, the adverse employment decision. The focus of the dispute is whether the defendant engaged in the interactive process. The first element of the four-part test is established here. But the plaintiff cannot establish any of the other three elements. First, there is no evidence that the plaintiff requested an accommodation. Indeed, it was the defendant who sought to accommodate the plaintiff's disability and the plaintiff who rebuffed its efforts. The plaintiff argues that she implicitly sought an accommodation by providing the defendant with her physician's letters, but it is unreasonable to read those as requesting an accommodation, especially in light of the discussion above concerning an open-ended leave of absence. Rather, they are reasonably read as stating merely that the plaintiff would not be returning to work. They put the defendant on notice that the plaintiff was disabled, but did not make clear that she desired any accommodation. This is true even if an open-ended leave of absence is a reasonable accommodation because the defendant was never put on no-

tice that she sought such leave. The plaintiff's continued absence was, instead, a *fait accompli,* and the defendant cannot be liable for failing to intuit what the plaintiff was responsible for bringing directly to its attention. Second, the evidence suggests that the defendant made a good-faith effort to accommodate her. It repeatedly sought to discuss accommodations with the plaintiff, which attempts the plaintiff never responded to. Finally, even assuming the defendant lacked good faith, as discussed above, there was no reasonable accommodation for the plaintiff.

Consequently, the court finds that the plaintiff has failed to establish a genuine issue of fact as to the alleged violation of her rights under the ADA because she cannot show that she was qualified individual or that the defendant failed to engage in good faith in the interactive process. Accordingly, the court will grant the defendant's motion for summary judgment with respect to count one of the plaintiff's complaint. Because the ADA analysis is conterminous with the PHRA analysis, the court also finds that the plaintiff has failed to establish a *prima facie* case under the PHRA and will, accordingly, grant the defendant's motion for summary judgment with respect to count four of the plaintiff's complaint.

## C. The FMLA (Count Two)

The FMLA provides that an eligible employee "shall be entitled to a total of 12 workweeks of leave during any 12–month period ... because of a serious health condition that makes the employee unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D); *see Callison v. City of Philadelphia,* 430 F.3d 117, 119 (3d Cir.2005). After taking FMLA leave, "an employee is entitled to be returned to the same position the employee held when leave commenced, or to

an equivalent position with equivalent benefits, pay, and other terms and conditions of employment." 29 C.F.R. § 825.214(a); *see Callison*, 430 F.3d at 119. But an employee is not entitled to restoration to her prior or an equivalent position "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition." *Id.* § 825.214(b); *see Rinehimer*, 292 F.3d at 384 (citing *Reynolds v. Phillips & Temro Indus., Inc.*, 195 F.3d 411, 414 (8th Cir.1999); *Tardie v. Rehab. Hosp.*, 168 F.3d 538, 543 (1st Cir.1999)). Unlike the ADA, the employer has no obligation to accommodate an employee's health condition to enable her to perform an essential function of her job. *Rinehimer*, 292 F.3d at 384 (citing 29 C.F.R. § 825.214(b); *Tardie*, 168 F.3d at 544).

■ An employee's right to leave under the FMLA cannot be waived or bargained away. *Id.* § 825.220(d). In addition, the employee need not request leave under the FMLA, but need only request leave under circumstances that indicate it is FMLA eligible. *Id.* § 825.302(c). The burden is on the employer to ensure that the employee is aware of her rights under the FMLA and that qualifying leave is designated as FMLA leave. The employer must post a conspicuous notice in the workplace. *Id.* § 825.300(a). It must also inform the employee of her rights under the FMLA in a handbook that describes benefits, if provided, *id.* § 825.301(a)(1), or, otherwise, at the time an employee requests leave, *id.* § 825.301(a)(2). After the employee requests leave the employer must, within a reasonable time, provide the employee with "written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations,"

including whether the leave will be counted as FMLA leave and the employee's right to restoration. *Id.* § 825.301(b)(1). "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section." *Id.* § 825.208.

■ The FMLA provides various protections for employees who are eligible for or have taken FMLA leave. *See* 29 U.S.C. § 2615; 29 C.F.R. § 825.20. Under the "entitlement" or "interference" provision, it is illegal for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. 29 U.S.C. § 2615(a)(1); *see Callison*, 430 F.3d at 119; *Conoshenti*, 364 F.3d at 141–42; *Bearley*, 322 F.Supp.2d at 570–71. "Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the" FMLA. 29 C.F.R. § 825.220(b). To establish a violation of the entitlement provision, an employee need only show that she was entitled to FMLA benefits, 29 U.S.C. § 2612(1), and the employer interfered with them, 29 U.S.C. § 2614(a)(1). *Callison*, 430 F.3d at 119. "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Id.* at 120. Consequently, it is irrelevant whether the employer had a legitimate reason to deny the benefits or treated disparately or similarly other employees.[8] *Id.* at 119–20.

■ Interference with an employee's rights includes an employer's failure to advise the employee of her rights under the FMLA. *Conoshenti*, 364 F.3d at 142–43. However, to prevail on an interference

---

**8.** This means the *McDonnell Douglas* burden-shifting test does not apply.

claim based on a failure to advise, the employee must show prejudice by "establish[ing] that this failure to advise rendered him unable to exercise that right in a meaningful way, thereby causing injury." *Id.* at 143–44. In discussing the nature of the prejudice from a failure to advise, the Third Circuit cited with approval the District Court for the District of New Jersey:

> [T]he purpose of the regulations enacted by the DOL ... is to ensure that employers allow their employees to make informed decisions about leave .... The overall intent of the FMLA is lost when an employer fails to provide an employee with the opportunity to make informed decisions about her leave options and limitations. Without such an opportunity, the employee has not received the statutory benefit of taking necessary leave with the reassurance that her employment, under proscribed conditions, will be waiting for her when she is able to return to work.

*Id.* at 144 (quoting *Nusbaum v. CB Richard Ellis, Inc.*, 171 F.Supp.2d 377, 385–86 (D.N.J.2001)). Thus, the notice of her FMLA rights enables an employee to not only know that she has at least twelve weeks of protected leave, but also to structure her work schedule and leave around the twelve guaranteed weeks. *See id.*

■ Here, the plaintiff has not established a *prima facie* case of interference with her FMLA rights. There is no evidence that the defendant informed the plaintiff of her FMLA rights or otherwise fulfilled its obligations under the FMLA, and, for the purposes of this motion, the court finds that the defendant failed to advise the plaintiff of her FMLA rights. However, the plaintiff has not established any prejudice.

First, the court notes that the plaintiff was off work for approximately twenty-five weeks before she was informed of the ter-

mination hearing, more than twice as long as the protected leave period under the FMLA, and then for more than five additional months before she was terminated. Second, as discussed above, the plaintiff was unable to perform the essential functions of her job and could not return to work after the protected period provided by the FMLA. The plaintiff claims that she submitted evidence that, had she known of her rights, she would have restructured her leave or otherwise received more protection. But the court cannot credit this assertion. The record is clear that the plaintiff could not work at all after her injury and made no effort to attempt to return to work within the FMLA framework. There is no evidence in the record that the plaintiff sought to restructure her leave or, considering the severity of her injuries, could have restructured her leave. Consequently, the court finds that the plaintiff has failed to establish a genuine issue of fact as to the alleged violation of her rights under the FMLA because she can show no prejudice resulting from the defendant's failure to advise her of her FMLA rights. Accordingly, the court will grant the defendant's motion for summary judgment with respect to count two of the plaintiff's complaint.

**D. Retaliation in Violation of the ADA, the FMLA, and the WCA (Counts Three and Five)**

■ The ADA, the FMLA, and the WCA prohibit an employer from retaliating against an employee because the employee exercised her rights under the statutes or "oppos[ed] any practice made unlawful by" them. 29 U.S.C. § 2615(a)(2) (FMLA); 42 U.S.C. § 12203(a)(ADA); 29 C.F.R. § 825.220(c) (FMLA); *see Dunsmuir v. May Dept. Stores Co.*, 120 Fed.Appx. 927, 929 (3d Cir.2005) (not precedential) (WCA);

*Williams,* 380 F.3d at 758–59(ADA); *Conoshenti,* 364 F.3d at 146 (FMLA); *Griesbaum v. Aventis Pharm.,* Civ. No. 04–1726, 2006 WL 2796160, **1–2 (M.D.Pa. Sept. 25, 2006)(WCA). A retaliation claim is analyzed under the *McDonnell Douglas* test. To establish a *prima facie* case of retaliation in violation of the ADA, the FMLA, or the WCA, the plaintiff must show that she engaged in an activity protected under any of the statutes; she suffered an adverse employment decision; and, the adverse decision was causally related to the exercise of her ADA, FMLA, or WCA rights.[9] *Dunsmuir,* 120 Fed.Appx. at 929 (citing *Shellenberger,* 318 F.3d at 187); *Williams,* 380 F.3d at 759 (citing *Fogleman v. Mercy Hosp.,* 283 F.3d 561, 567–68 (3d Cir. 2002)); *Conoshenti,* 364 F.3d at 146 (citing 29 C.F.R. § 825.220(c)); *Griesbaum,* 2006 WL 2796160, *2 (citing *Nelson v. Upsala Coll.,* 51 F.3d 383, 386 (3d Cir. 1995)).

■ Here, the court finds that the plaintiff has failed to establish a *prima facie* case of retaliation. With respect to the ADA and FMLA claims, even assuming, *arguendo,* the first two elements, the court finds that the plaintiff cannot establish a causal relationship between her termination and the exercise of her ADA or FMLA rights. She argues that the defendant retaliated against her for filing her EEOC complaint. But the record is clear that the plaintiff had already been terminated *before* she filed the complaint. She further argues, to get around this issue of

timing, that the defendant was put on notice of the forthcoming EEOC complaint by her attorney's letters of March 30, May 3, May 10, and July 5, 2004. However, the first three letters contain absolutely no indication that the plaintiff was contemplating filing an EEOC or any other complaint. The July 5, 2004, letter, does indeed state that the plaintiff would pursue the vindication of her rights in federal court. The court finds, however, that there is no causal relationship between that threat and the plaintiff's termination. At the time the letter was written, the termination hearing had been scheduled for over four months and the plaintiff had been informed of the charges. The hearing and the hearing officer's report on which the defendant's board based its termination decision are based entirely on those charges. There is no indication that the defendant ever considered the possibility of an EEOC or any other complaint in reaching its decision.

■ With respect to the WCA claim, the court also finds that the plaintiff cannot establish a causal relationship between the exercise of her rights under the WCA and her termination. In addition, the court finds that the plaintiff cannot establish that she suffered an adverse action. In settling her workers' compensation claim, the plaintiff, with the advice of counsel, signed a resignation agreement. Thus, the defendant did not undertake an adverse decision against the plaintiff for the purposes of the WCA retaliation claim.[10] Furthermore, the time between

---

**9.** The Pennsylvania Supreme Court has not articulated a test for WCA retaliation; consequently, the Third Circuit and the district courts in Pennsylvania apply the Title VI I retaliation analysis. *Dunsmuir,* 120 Fed. Appx. at 929 (citing *Christman v. Cigas Mach. Shop, Inc.,* 293 F.Supp.2d 538, 543 (E.D.Pa. 2003); *Kennelly v. Pennsylvania Tpk. Comm'n,* 208 F.Supp.2d 504, 517 (E.D.Pa.2002); *Land-*

*messer v. United Air Lines, Inc.,* 102 F.Supp.2d 273, 277–78 (E.D.Pa.2000)); *Griesbaum,* 2006 WL 2796160, *2 (citing *Christman,* 293 F.Supp.2d at 543; *Landmesser,* 102 F.Supp.2d at 277–78).

**10.** The court does not address the significance, if any, of the resignation agreement upon any other claims.

the termination hearing process—the date the plaintiff received notice of the hearing and the termination decision—and when the plaintiff filed her claim under the WCA is too great to allow a reasonable inference of causality. The plaintiff filed under the WCA in September 2003 and received notice of the hearing nearly six months later. Any link between those times is too tenuous without additional evidence to suggest that the defendant undertook the termination process because of the WCA claim, and there is no such evidence, only the plaintiff's bare assertion. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir.2000) ("[T]emporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive.' ") (citing *Krouse*, 126 F.3d at 503); *Krouse*, 126 F.3d at 503 (discussing that mere fact that adverse action occurs after protected activity does not establish causal link without more and collecting cases); *cf. Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989) (holding that causal link was demonstrated by termination two days after employee filed WCA claim).

Consequently, the court finds that the plaintiff has failed to establish a genuine issue of fact as to the defendant's alleged retaliation against the exercise of her rights under the ADA and the FMLA because she cannot show a causal relationship between the defendant's notice of a pending EEOC complaint and the process leading to her termination. Accordingly, the court will grant the defendant's motion for summary judgment with respect to counts three and five of the plaintiff's complaint.

### E. The PDA (Count Six)

■■■ Title VII prohibits an employer from discriminating against an employee on the basis of that employee's sex. 42 U.S.C. § 2000e–2(a). The PDA provides that sex includes an employee's pregnancy, which means that discrimination because of an employee's pregnancy is a violation of Title VII. 42 U.S.C. § 2000e(k). An employer violates the PDA if an employee's pregnancy was "a motivating factor for any employment practice." 42 U.S.C. § 2000e–2(m). Because the PDA is part of Title VII, a claim arising under it, based on indirect evidence, is analyzed according to the *McDonnell Douglas* test. *Burdine*, 450 U.S. at 252, 101 S.Ct. 1089; *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817; *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318 (3d Cir.2000); *Geraci v. Moody–Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir.1996). Thus, to establish her *prima facie* case, the plaintiff must prove by a preponderance of the evidence that "she is a member of a protected class, that she was qualified for her position, and that she was discharged 'under conditions that give rise to an inference of unlawful discrimination.' " *Geraci*, 82 F.3d at 580 (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089). In a case alleging pregnancy discrimination, to raise an inference of an unlawful discharge, the plaintiff must adduce evidence of the employer's knowledge of the her pregnancy. *Id.* at 580–81. "If the pregnancy is not apparent and the employee has not disclosed it to her employer, she must allege knowledge and present, as part of her prima facie case, evidence from which a rational jury could infer that the employer knew that she was pregnant." *Id.* at 581.

■■■ In this case, the plaintiff has failed to establish a *prima facie* case of discrimination in violation of the PDA. There is no evidence that the plaintiff's pregnancy was apparent. There is evidence, including the plaintiff's admission, that the plaintiff never disclosed her pregnancy to the defendant. It is undisputed that the defendant

became aware of the pregnancy upon receiving the March 30, 2004, letter. But as the defendant points out, that letter was sent over a month after the termination hearing was scheduled. The court finds that the March 2004 letter is insufficient evidence to raise an inference of discrimination.

The plaintiff, however, asserts that a February 16, 2004, letter, from her physician informed the defendant of her pregnancy. But there is no evidence to support the assertion. Certainly, her physician's letter is dated before the hearing notice was posted. But, the plaintiff has offered no evidence to show that the defendant received the letter so as to warrant the inference of its knowledge. The letter, a generic "to-whom-it-may-concern" letter, was provided to the plaintiff to use as she saw fit. She claims she provided the letter to *her attorney*, who *may* have forwarded it to the defendant, but she is not certain of this. The defendant denies receiving the letter, and the plaintiff has offered no evidence to rebut the defendant's denial, except to say that the record is unclear as to whether the defendant became aware of the plaintiff's pregnancy in February or March 2004.

Although the court is duty-bound to draw all inferences and resolve all evidentiary disputes in favor of the plaintiff, the plaintiff's alleged facts surrounding the February letter are so lacking in certainty, especially in light of the specific denial of receipt by the defendant, that it does not properly allow the court to find that there is any genuine issue of material fact with respect to the plaintiff's *prima facie* case under the PDA. Consequently, the court finds that the plaintiff has failed to establish, by a preponderance of the evidence, a *prima facie* case of discrimination in violation of Title VII as amended by the PDA

because she cannot show that the defendant had knowledge of her pregnancy so as to allow even an inference of disparate treatment. Accordingly, the court will grant summary judgment to the defendant on count six of the complaint.

## IV. Conclusion

On the basis of the foregoing, **IT IS ORDERED THAT:**

(1). the defendant's motion for summary judgment is GRANTED;

(2). the plaintiff's complaint is DISMISSED;

(3). The jury trial scheduled for November 13, 2006 is cancelled; and,

(4). the Clerk is directed to close the case.